**BACON v. UNITED STATES.**

No. 2427.

Circuit Court of Appeals, Tenth Circuit.

May 6, 1942.

W. F. Rampendahl, of Muskogee, Okl., for appellant.

Frank Watson, Asst. U. S. Atty., of Muskogee, Okl. (Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Bentley B. Bacon, Doyle Gordon and Milton Tarver were convicted, and Irwin W. Fox pleaded guilty, in the District Court of the United States for the Eastern District of Oklahoma on both counts of an indictment. The first count charged them with conspiracy to import intoxicating liquor into the State of Oklahoma in violation of 27 U.S.C.A. § 223. The second count charged them with transporting and importing intoxicating liquor containing more than four per cent of alcohol into Oklahoma. Bacon was placed on probation

for a period of three years on the first count, and sentenced to imprisonment in an institution of the jail type, to be designated by the Attorney General, for a period of six months, and to pay a fine of $250 on the second count. He has appealed.

The government relied largely on the testimony of Fox to establish the conspiracy and Bacon's connection therewith. Fox testified, in substance, that in 1940 he decided to haul some whiskey; that a bus driver gave him a card with a man's name on it in a pool hall in Oklahoma City; that he passed the card to Gordon and told him he wanted some whiskey; that Gordon said "O. K." and kept the card. He testified that he had a Texas license for his car on the first trip he made after whiskey because Gordon had told him he would have to have a Texas license before he would let him have whiskey. It does not clearly appear when or where he had the conversation with Gordon regarding the Texas license; presumably it was before he went after the first load, because he then had the license. He made seven or eight trips after whiskey. The first time he bought twelve cases. Gordon told him to drive in the back and he drove in. Gordon loaded the whiskey and opened the door and said he would look around to see if there were any "laws." Sometimes Gordon was present and at other times Tarver was there. At times, both Tarver and Gordon would be there. He talked to Bacon only once. He does not remember just when, but thinks it was on the first trip. Bacon asked him how things were in Oklahoma and how the whiskey business was.

Gordon denied telling Fox that he would have to have a Texas license before he sold him whiskey. He denied telling him that he would "look to see if there were any laws." He testified that he worked for Bacon on a weekly salary of $14; that he received no commissions on sales; that Fox came to the store in November and asked the price of whiskey; that he asked him where he lived and he replied "Texas"; that he asked Fox where in Texas, and that he grinned and said, "There is my car. I have a Texas license on it"; that he sold him eight or ten cases; that many of their customers wanted their whiskey wrapped in lugs so they could haul more whiskey; that Bacon instructed him and Tarver to sell whiskey to anyone from Texas, but not to persons from Oklahoma; that he looked for approaching traffic.

Tarver testified that he sold Fox whiskey three or four times; that he never asked him where he was from; that Bacon had instructed him and Gordon not to sell whiskey to anyone unless he lived in Texas; that the door of the loading room was flush with the alley and that there was a great deal of traffic in the alley.

■ It fairly appears that Bacon knew that Fox was from Oklahoma, that his employees were selling him whiskey, and that he had reason to know that Fox was taking the whiskey to Oklahoma. But one does not become a conspirator, nor is he chargeable as a co-conspirator, simply because he sells material or merchandise knowing that it will be used for an unlawful purpose. United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128.

■■ There can be no conspiracy without an agreement between two or more persons to violate the law. The gist of the offense of conspiracy is an agreement among the conspirators to commit an offense, attended by an overt act of one or more of the conspirators to effect the object of the conspiracy. United States v. Falcone, supra; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962. Ordinarily such an agreement is not established by direct testimony. Men who conspire to violate the law do not generally reduce their agreement to writing nor seal their unlawful contract in the presence of attesting witnesses. It is generally necessary to establish a conspiracy by circumstances and conclusions that reasonably flow from the conduct of the conspirators, but the conspiracy must nevertheless be established by competent evidence, either direct or circumstantial. The record is devoid of any evidence which tends to show that Bacon had any conversation, agreement, dealings or understanding with Fox regarding an agreement to violate the liquor transportation act.

The government attempts to establish the existence of the conspiracy from conclusions drawn from the conduct of Gordon and Tarver, Bacon's employees, in removing the whiskey from the cases and wrapping it in paper packages or lugs, and from the further fact that Gordon said, according to Fox, that he would "look to see if there were any laws." The undisputed evidence is that wrapping the whiskey in

lugs only enabled the purchaser to haul more at one time. It is established that many purchasers had whiskey wrapped in this manner to enable them to haul more. Nothing unlawful can be implied from this. The only remaining suspicious fact, then, is that Gordon aided Fox to evade any officers that might be about by ascertaining and informing Fox of their presence before he started. There is no evidence that Bacon knew of this.

■ Assuming, without deciding, that Gordon and Tarver entered into a conspiracy with Fox to violate the liquor transportation act, Bacon would not become liable thereby as a conspirator unless he knew of the existence of the conspiracy between Gordon, Tarver and Fox, and, with knowledge thereof, committed some act in furtherance thereof. United States v. Falcone, supra; Skelly v. United States, 10 Cir., 76 F.2d 483. There is not a scintilla of evidence that Bacon knew of a conspiracy between Gordon, Tarver and Fox, if one did exist. That he did not keep proper records of his sales; that he knew that Fox was in the whiskey business in Oklahoma, and that he was buying whiskey at his store, is not sufficient to establish the existence of a conspiracy between him and Fox, the purpose of which was to violate the federal liquor transportation act by transporting intoxicating liquor into the state of Oklahoma.

■ The second count of the indictment charged Bacon, together with the other defendants, with the substantive offense of transporting intoxicating liquor into Oklahoma in violation of 27 U.S.C.A. § 223. 18 U.S.C.A. § 550 provides that: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." Although Bacon was not guilty of the offense of conspiracy, if the facts warranted he would be guilty of the substantive offense of aiding and abetting Fox in violation of the above statute. Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975. In

Reid v. United States, 7 Cir., 44 F.2d 51, it was held that an owner who had knowledge that his tenant was maintaining a liquor nuisance and consented thereto was guilty of aiding and abetting the nuisance and was therefore guilty as principal. To the same effect, see Steir v. United States, 1 Cir., 2 F.2d 149, and Rosenberg v. United States, 8 Cir., 15 F.2d 179. In Backun v. United States, 4 Cir., 112 F.2d 635, it was held that guilt as an accessory depends not on having a stake in the outcome of the crime, but on aiding and abetting the perpetrators and that one who makes a profit by furnishing to criminals, whether by sale or otherwise, the means to carry on their unlawful business, aids them just as truly as if he were a partner. While the Backun case involved a felony, the reasoning applies with equal force and logic to a misdemeanor. 18 U.S.C.A. § 550 abolished the common law distinction between felonies and misdemeanors as to aiders and abettors.

■ Mere possibility or suspicion that goods lawful in themselves might be used unlawfully is not enough to make one an aider and abettor. More is required than that. He must know or have reason to know that the goods which he sells are and will be used in an unlawful venture.

■ Bacon knew that Fox was a bootlegger from Oklahoma. In a conversation with him in his store, he asked him how the whiskey business was in Oklahoma. He made no records of any sales to him. While he sold him liquor in wholesale lots, he had no wholesale liquor license as the law required. Fox bought liquor in wholesale quantities at his store seven or eight times. Although there is no direct evidence that Bacon sold him whiskey or was present when he bought it, it would be straining one's credulity to hold or believe that he did not have full knowledge not only that Fox was buying the liquor, but also of the unlawful use to which he was putting it.

The judgment of conviction is reversed as to the first count, and affirmed as to the second.